Thank you. We'll now move to the to the final case on our calendar today for argument. That's United States v. Renford. That's a motion for bail pending trial. Let me make sure counsel is here. Ms. Davis. Good morning, Your Honors. I think it's afternoon now so thank you for your patience. And Ms. Gregory. Yes, Your Honor. Okay, great. All right, so I think I've given you each five minutes and Mr. Davis you reserve three minutes of rebuttal so that's you're going to be longer on the back end. So go ahead, you may proceed. Judge, and may it please the court. I'm asking that the court reverse Judge Arcaro's decision in the lower court and uphold Judge Magistrate, judges, judge. Your Honor. First, and my most central point is that the government didn't prove by preponderance of the evidence that that no set of factors could be present or set of conditions could be present. That would ensure the public safety of the government did was simply recite some of the low level crimes that my client has had in the past, which also entailed low level monitoring, nothing of the sort that pretrial services has at their disposal, such as DPS monitoring, such as the intense monitoring that pretrial services does with regard to the schedule that they have those released to me. In addition to that, Your Honor, the case law that the government is trying to use and and trying to say that it's applicable client in terms of why he should be detained. They're using cases involving individuals who have organizations that are able to cause wreak havoc in the community organizations with stated ethos for organized crime organizations that have specific purposes to break the law. They have contingencies in place to break the law and they have contingencies in place to punish those in the community and do harm to those in the community who might go against what it is that they're about. Here we have my client who was an individual who did something that was surreal for many of us, Judge. We have a person of gender of age who arguably came in contact with feelings with who, in our estimation, given what we've seen may have may have if the government is correct and that my client is the person depicted in the evidence that they profit have came to the under the influence of people trained to influence the easily influenced in the sort of sort of prefab anarchist movement, if you will, by the government's own admission. You see that individuals came into the community who weren't of the community and the sole purpose was to stoke violence. The sole purpose was to sort of cause the social unrest. And we don't know if they're individuals from the left or right, but we know that these individuals made their way to major metropolises throughout the country. And the sole purpose was to recap weak minded. My client has a substantial mental health history by all accounts, and he was predisposed to be influenced. Now, the court wants to say that because of that, he there's there's nothing that can be done to keep societies safe for my client. But that's the evidence simply doesn't bear that judge. We believe that there are conditions which could be imposed. Which would allow part of it actually came out in droves to try and secure his release. We believe that the government overreach in addition to that judge. When we were before Magistrate McCarthy, he did. He was silent as to his entire rationale behind his decision. However, in the beginning of my presentation, I stood largely on my submissions to the court, as did opposing counsel. And as Judge McCarthy articulated his rationale for his decision, at no point did opposing counsel raise any of the issues that he cited in his papers. And our estimation does this tantamount to form shopping, if you will. He waxed silent. He waited on Judge McCarthy to make his decision. And the whole time he intended to bring these issues up to another court when they were still right for discussion before Judge McCarthy. And so I would ask the court to strike that and not allow him to benefit from that maneuvering, if you will, that strategic silence, if you will. And to allow Judge McCarthy's decision to stand. All right. Thank you. We'll now hear from Ms. Gregory, who has five minutes. Yes, I just want to make sure your honors can hear me. I was having a little audio trouble. Am I coming through? Yes. All right. Thank you. Good. Good afternoon. May it please the court. Catherine Gregory, assistant U.S. attorney representing the government. This is straightforward. This court should affirm the district court's order of detention because the decision did not constitute clear error. On the contrary, the district court's decision was well-founded in the record. And it's entitled to deference because every 3142G factor weighed against pretrial release. And I just like to start at the outset that there is a statutory presumption against release pursuant to 3142E3C for this charge. But going to the factors themselves. First, the nature of this offense is unquestionably serious. The parties dispute the extent of the damage to City Hall, but setting fire to a building, especially in an urban environment on a particularly chaotic night in Buffalo. And I, too, recall watching this live on television was certainly a dangerous act. And as the district court found, Mr. Renford's alleged conduct was deliberate. There's no indication the district court found that he was intoxicated or in any other way influenced by so-called outside parties. Second, the weight of the evidence here is significant. As we outlined in our papers, both below and on appeal here, Mr. Renford was captured on live television setting fire to City Hall. Allegedly, he confessed to the crime in a videotaped interview, I believe post-Miranda with law enforcement. And there's indications of consciousness of guilt where he discussed with a friend, possibly changing his appearance, getting a tattoo to disguise himself. And, of course, his hair color had changed in between the time of the event and when he was arrested. And he lied to law enforcement during that interview, even where he admitted to the conduct. He still told that he minimized the extent of his criminal history. And that goes to the third factor here. The district court had very little need to speculate as to whether Mr. Renford would comply with conditions of release because of his recent criminal history. Specifically, four misdemeanor convictions, a felony conviction, a revocation of probation in the recent past, three bench warrants and at the time of the bail hearing, at least three active orders of protection. So the district court's decision to find it that weighed against pre-trial release was well within its discretion. So Mr. Renford also admitted as part of his characteristics that he had untreated mental health conditions, that he declined treatment and medication, that he had past and present substance abuse, and that according to pre-trial services, at least, he hadn't held stable employment since he was 14 years old. Lastly, the district court was right on the nose when it determined that Mr. showing him allegedly participating in the looting of a 7-11 earlier in that evening. And I just want to briefly address Mr. Renford's argument about COVID-19 being a compelling reason for pre-trial release. I don't believe that that argument was made before the district court. But in any event, he's offered no medical reason why he might be more vulnerable than any other inmate in custody. He's offered no information about the situation at his facility. And of course, we all face a risk of COVID-19. And according to the logic of his argument, every inmate would have to be released, regardless of their individual circumstances, as a result of COVID-19. So, Your Honors, unless you have any other questions, for all these reasons, I'd submit that there is nothing in the record that should leave this court with a firm conviction that a mistake has been made and the order of detention should be affirmed. All right. Thank you, Ms. Gregory. Mr. Davis, you have three minutes of rebuttal. And thank you, Your Honor. Judge, first of all, I'll address the alleged damage to City Hall. And, you know, Judge, my client did not start this fire. There was an individual who was seen setting things on fire in the area. Government hasn't been able to find this individual or individuals. The only person that the government found on that evening with regard to any of the violence that took place, or any of the disturbances that took place in Buffalo, Buffalo's downtown area on that evening, was my client because of this alleged mass that apparently the government feels as though he's the only one that has this mass. But nevertheless, everyone who was a part of this coalition, if you will, that came to Buffalo or that came from parts of Buffalo to participate, they all had a mixed uniform. They all had masks on. They all had some sort of insignia showing that they were a part of anarchist movement. Or an organization they represented. The only thing that's clear is that they seemed intent on causing violence. Yes, it's true. You can see that my client did come into contact at some point with them. But the government has shown no way that they had any ties to these individuals. The government talks about my client's cell phone and get all the data from his phone from that evening and historically from his phone. But what's missing is any communication with any sort of organization saying be here at this time, saying do this, saying do that. Any sort of planning, any sort of preparation. They want to say to my client somehow was making plans on leaving. But my client was found, according to them, behind a pile of clothes at home with his child. Having been on all major networks with a story that made national news and not international news. My client was at home, according to them, hiding behind underwear. According to them, my client, as soon as they walked in the door, said the mayor's right. I'm an effing idiot. If they are correct. My client was forthright and admitted everything that happened. Did not try to flee, which he didn't see in his phone. And I'll say it again. You didn't see not even a request for an Uber to go to the other side of town. My client was on probation in the Cattaraugus County, which is about an hour outside of Buffalo. My client violated probation because he did not have the financial means to make it back and forth to report to Cattaraugus County. And there were issues with him being monitored because he was being monitored. And although it's in the same federal jurisdiction, it's outside of Erie County. He didn't have the means to really comply with the court orders. Yes, that is on him, but he was tender of age and all this. The government wants the court to consider the fact that my client has a work history since he was 14 years old. I would argue my client didn't have the support network to even understand the value of working at 14 years old. He's. Oh, Bob, it is a person. I'm sorry. You know, you the video sort of slowed down to a crawl, at least on my screen for you. I'm sorry. You're on. Tell me what the last. Did you hear what I said or do I need to repeat anything? Just repeat that last bit. And then I think you're a little over. So I'll let you wrap up simply that he's. As a person, just 19 argument judge. Over 19 is present. It's the back over 19. COVID-19 was mentioned at the beginning of every proceeding we've had. It's clear from the government's own submissions and the pretrial services report. My client's mother. I believe we also submitted medical. So my client has asthma. So it's kind of disingenuous for the government to say that we never brought up any health reasons. Why my client would be predisposed to some sort of why he'd be at heightened risk because of COVID-19. That was that's replete in the record that he does have asthma and he does have issues. Not to mention the mental health aspect of it. Judge, we set up an inpatient bed. Judges, we set up an inpatient program. For him to go directly from the jail with his issues with substance abuse because of his self medication. And I think that's at the crux of all of this. That's me to predispose to what happened that evening. And ultimately, this isn't something that's going to send away the rest of his life. He's 20 years old. This course of action, if you will, it benefits everyone. So I would just ask that the court really look at what the government is attempting to do here to scapegoat this child. Something that they can't fix. It's something it's a crime that they really can't solve. So they're trying to scapegoat this 20 year old for something that's plaguing the entire country. All right. Well, let's let's end it there. Thank you both for your arguments. We will reserve decision.